## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

RONALD WEST,

  **Plaintiff,**

  v.          CASE NO.  24-3233-JWL

UNITED STATES, et al.,

  **Defendants.**

## <u>MEMORANDUM AND ORDER TO SHOW CAUSE</u>

Plaintiff Ronald West is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

## I.  Nature of the Matter before the Court

Plaintiff, a federal prisoner, brings this pro se civil rights action under 28 U.S.C. § 1331. Plaintiff is incarcerated at Hazelton-FCI in Bruceton Mills, West Virginia.  The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff alleges that Mary A. Noland, BOP Regional Counsel, denied his tort claim. (Doc. 4, at 1.)  Plaintiff claims that "defendant" was negligent when Food Service served pork on March 25, 2023, during Ramadan at FCI-Leavenworth in Leavenworth, Kansas ("FCIL").  *Id*. at 2.  Plaintiff claims that he was placed on administrative segregation on October 20, 2023, in retaliation for his religious beliefs "because there was no evidence supporting the incident report to place the Plaintiff in segregation."  *Id*. at 2–3.

Regarding the pork that was served, Plaintiff states that the witnesses are Spears and Gomaz "the two C/Os as Plaintiff [sic] supervisor and Ms. Mack, on the ZP exeptem [sic] in the

1

SENTRY." *Id.* at 3. Plaintiff attaches the label from a package of chicken bratwurst that shows the ingredients include "stuffed in a natural pork casing." (Doc. 4–1.)

Plaintiff also claims that Mr. Allen did not allow Plaintiff to be present during the inventory process from the SHU, in violation of BOP policy. (Doc. 4, at 4.) Mr. Allen is not named as a defendant.

Plaintiff names the United States and Mary A. Noland as defendants. Plaintiff seeks compensatory damages in the amount of "$600.00 for the ZP except and $2.500. for the personal property that was demolish [sic] and $2.500 violating [Plaintiff's] religio[us] beliefs." *Id.* at 6.

Plaintiff has also filed a "Motion for the Court to Consider on the Above Case" (Doc. 3). In the motion, Plaintiff argues that he has been trying to settle the claims with Defendant Noland for over one year and she denied Plaintiff's request to settle. (Doc. 3, at 1.) Plaintiff filed a second "Motion for the Court to Consider on the Complaint" (Doc. 5), claiming that "BOP Staff" were negligent when his family photos were demolished when he packed out to transfer to FCI-Hazelton. (Doc. 5, at 1.) Plaintiff asks the Court to consider his claims under the Federal Tort Claims Act and to "have the Regional Counsel settle the Claims with the Plaintiff." *Id.*

## II. Statutory Screening

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A court liberally construes a pro se complaint and applies "less stringent standards than

formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the

3

complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. 42 U.S.C. § 1983

Plaintiff's original complaint that was not on the Court-approved form indicated that Plaintiff was bringing his claims under 42 U.S.C. § 1983. *See* Doc. 1, at 1. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A defendant acts "under color of state law" when he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id*. at 49 (citations omitted). Plaintiff names the United States and the FBOP Regional Counsel as defendants, and provides no factual claim or support for a claim that any defendant acted under color of state law.

### 2. Claims Under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)

Plaintiff has not shown that a *Bivens* remedy is available for his claims. The Tenth

Circuit recently noted that the Supreme Court "is on course to treating *Bivens* as a relic of the 20th century" and that "[t]his development has been gradual, but relentless."  *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024), *rehr'g denied* (Apr. 5, 2024).  The Tenth Circuit in *Logsdon* found that:

> Without explicitly overruling its three acknowledged precedents, the [Supreme] Court has shown an increasing willingness to distinguish them, now stating that the ultimate question to ask when determining whether the courts should recognize a *Bivens* cause of action not created by Congress is ordinarily only "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492, 142 S. Ct. 1793, 213 L.Ed.2d 54 (2022). And the circumstances in which the answer to the question is "no" appears to comprise a null set. *See id.* at 503, 142 S. Ct. 1793. (Gorsuch, J., concurring) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action? It seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation."); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (quoting *Egbert*, 596 U.S. at 491, 142 S. Ct. 1793) (citation omitted)). The Court has said in effect that almost any difference between the case at hand and the three Court precedents can justify rejecting a cause of action. *See Egbert,* 596 U.S. at 503, 142 S. Ct. 1793 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").
>
> And, perhaps even more striking, the Court has justified a departure from those precedents even when the facts are virtually the same if the government can provide a reason for not recognizing a cause of action that was not considered in the applicable precedent. Thus, in *Egbert* itself the Court considered an excessive-force claim, similar to the one in *Bivens*, against a federal officer. *See Egbert*, 596 U.S. at 495, 142 S. Ct. 1793 ("*Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury." (internal quotation marks omitted)). But it held that the court of appeals erred by recognizing a cause of action under *Bivens*, distinguishing *Bivens* based on facts that have

> no bearing on the elements of an excessive-force claim: the
> incident arose in the "border-security context," and Congress had
> created remedies for misconduct by government agents. *See id.* at
> 494, 142 S. Ct. 1793. Given such hurdles placed in the way of a
> *Bivens* cause of action, Mr. Logsdon has no claim.

*Id.* at 1355–56.

The Tenth Circuit in *Logsdon* found that "[a] second independent ground for not

recognizing a *Bivens* action . . . is that the availability of alternative remedies for misconduct . . .

suggests that this court should not be the institution to create a remedy." *Id.* at 1359. "If there

are alternative remedial structures in place, that alone, like any special factor, is reason enough to

limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* (quoting *Egbert*, 596

U.S. at 493). The Tenth Circuit quoted *Egbert* as follows:

> "So long as Congress or the Executive has created a remedial
> process that it finds sufficient to secure an adequate level of
> deterrence, the courts cannot second-guess that calibration by
> superimposing a *Bivens* remedy. That is true even if a court
> independently concludes that the Government's procedures are not
> as effective as an individual damages remedy." *Id.* at 498, 142 S.
> Ct. 1793 (internal quotation marks omitted).

*Id.*

In *Silva*, the Tenth Circuit held that the Bureau of Prison's Administrative Remedy

Program "ARP" was adequate. *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022)

(finding that the key takeaway from *Egbert* is "that courts may dispose of *Bivens* claims for 'two

*independent* reasons: Congress is better positioned to create remedies in the [context considered

by the court], and the Government already has provided alternative remedies that protect

plaintiffs' ") (citation omitted); *see also Noe v. United States Gov't*, 2023 WL 8868491, at *3

(10th Cir. Dec. 22, 2023) ("We need not decide whether Noe's case is meaningfully different

from *Carlson*, because in the wake of *Egbert* and *Silva* . . . the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity between the two.").

In *Silva*, the Tenth Circuit had little difficulty in concluding "that the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring.' " *Silva*, 45 F.4th at 1141 (citation omitted). The *Silva* court found that "because *Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers,' . . . the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim." *Id*. (citing *Egbert*, 142 S. Ct. at 1806 (quoting *Malesko*, 534 U.S. at 71, 122 S. Ct. 515)).

### 3. No Constitutional Violation

Plaintiff fails to state a constitutional violation. He claims that pork was negligently served on one occasion at FCIL. Plaintiff does not clarify whether or not he is claiming this burdened his own religious exercise as opposed to him reporting the incident for other inmates. Regardless, Plaintiff fails to state a claim for relief. The Tenth Circuit has identified "three broad ways government action may impose a substantial burden on religious exercise:"

> requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010, unpublished) (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316) (10th Cir. 2010)). In *Strope*, the Tenth Circuit reasoned as follows:

7

> Illustrating the distinction between substantial burden and inconvenience, we held (1) the flat denial of a halal diet with approved meats was actionable, *id.* at 1316–20, but (2) an incident (the panel concurrence notes "sporadic incidents") in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable, *id.* at 1320–21; *id.* at 1325; see also *Gallagher*, 587 F.3d at 1070 (holding isolated violation of kosher restrictions did not support Free Exercise claim). We "assume[d] that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden," but that level had clearly not been reached.

*Id.* (citing *Abdulhaseeb*, 600 F.3d at 1321). In sum, mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden.

Plaintiff also claims that BOP regulations were not followed. Plaintiff claims that Mr. Allen (who is not named as a defendant) did not allow Plaintiff to be present during the inventory process from the SHU, in violation of BOP policy. The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007). Any claim based on the failure to follow BOP regulations is subject to dismissal for failure to state a constitutional violation.

Plaintiff also alleges that his placement in the SHU was retaliatory. Plaintiff fails to provide any factual support for this claim. He also fails to name any individual that allegedly

retaliated against him.  Plaintiff fails to state a claim of retaliation.  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims.  Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive.

### 4.  Relief

Any request for compensatory damages is barred by 42 U.S.C. § 1997e(e), unless Plaintiff alleges a physical injury.  Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  42 U.S.C. § 1997e(e).

"The plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted."  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) .  "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional."  *Id*. (citing *Robinson v. Page,* 170 F.3d 747, 748 (7th Cir.1999)).

Plaintiff claims that his photographs were destroyed.  He does not state who allegedly destroyed his photographs and only names the United States and the BOP Regional Counsel as defendants.  Although it is unclear whether any potential claim for property damage could survive § 1997e(e), where an adequate postdeprivation remedy exists, a plaintiff cannot assert a constitutional claim for the intentional deprivation of property.  *See Ybanez v. Scott*, 2015 WL 1258290, at *7 (D. Colo. March 17, 2015) (noting that the 10th Circuit does not appear to have addressed the issue of whether 1997e(e) bars an award of compensatory damages for the loss of property, but in *Allen v. Reynolds*, 475 F. App'x 280, 283–84 (10th Cir. 2012), the court appeared to reject, in *dicta*, an argument that an inmate's demand for compensatory damages for the destruction of personal photographs survived the lack of a physical injury under the PLRA); *see also Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (finding in case involving confiscated magazines that inmate did not suffer physical injury in connection with his constitutional claims, and allegation that personal property was lost, confiscated, or damaged does not state a claim where remedy is in state court).

In *Dalton v. United States*, the court held that:

> any claim for a negligent mishandling of property under the FTCA would be barred by sovereign immunity. *See* 28 U.S.C. § 2680(c)

(FTCA exception to its waiver of sovereign immunity includes claims arising from the detention of property by law enforcement officers); *Ali v. Fed. Bureau of Prisons,* 552 U.S. 214, 228 (2008) (holding that BOP officers who allegedly lost inmate's personal property during his transfer to another prison were "law enforcement officers" as the term is used in § 2680(c)); *Williams v. Mestas,* 355 F. App'x 222 (10th Cir. 2009) (holding that FTCA claim against prison officials arising from mishandling of personal property during transfer to another institution was improper because claim was barred by sovereign immunity); *Robinson-Bey v. Feketee,* 219 F. App'x 738 (10th Cir. 2007) (holding that FTCA did not waive sovereign immunity as to inmate's claim for lost or stolen property allegedly in possession of prison officials).

Further, to the extent that Plaintiff asserts that the loss of his property was an unauthorized intentional act under 28 U.S.C. § 2680(h), a claim premised on an alleged "intentional" destruction of property is outside the scope of the FTCA. *See* 28 U.S.C. § 2680(h) (the waiver of immunity for intentional torts is limited to assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution); *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied[.]").

Therefore, Plaintiff's claim regarding the alleged mishandling or intentional destruction of his personal property by BOP officers falls squarely within the exception established by 28 U.S.C. § 2680(c). As such, the Court lacks subject matter jurisdiction over any claim asserted under the FTCA.

\* \* \* \*

The BOP also has an administrative tort claims procedure whereby a federal inmate may file a claim with regard to his damaged or lost property. *See* 28 C.F.R. §§ 543.30-543.32. . . . Because an adequate postdeprivation remedy exists, Plaintiff cannot assert a constitutional claim for the intentional deprivation of property. *Id.* (holding that postdeprivation remedy exists through prison grievance procedure); 31 U.S.C. § 3723(a) (allowing the head of an agency to settle small-claims for loss of or damage to personal property caused by negligence of officer or employee of federal government); *Akervik v. Ray,* 24 F. App'x 865, 869 (10th Cir. 2001) (rejecting intentional deprivation of property claim because FTCA provides postdeprivation remedy, and, attached to plaintiff's complaint are documents indicating that plaintiff had pursued the administrative procedure required as a prerequisite to filing FTCA claim).

> Plaintiff fails to allege sufficient facts to state an entitlement to relief based on a deprivation of his Fifth Amendment due process rights. *See Mestas,* 355 F. App'x at 224 (prisoner's due process rights were not violated where prisoner was provided an administrative remedy to challenge the destruction of his property); *Wilson v. United States*, 29 F. App'x 495, 497 (10th Cir. 2002) (same). Therefore, to the extent Plaintiff's filings can be construed liberally to assert a Fifth Amendment due process claim, the claim should be dismissed for Plaintiff's failure to comply with Rule 8, or as legally frivolous pursuant to § 1915(e)(2)(B)(i).

*Dalton v. United States*, 2022 WL 21808236, at *2–4 (D. Colo. 2022), *adopted by* 2022 WL 21808239 (D. Colo. 2022).

Plaintiff is no longer housed as FCIL, therefore any request for injunctive relief would be moot. A transfer moots any request for injunctive relief against defendants from the former prison. Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*. Consequently, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974). The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the

employees of the original prison concerning the conditions of confinement.  *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to the inmate.

### 5. Motions

Plaintiff filed motions (Docs. 3, 5) asking the Court to consider them when screening his Complaint.  The Court has considered the allegations in the motions.  Because the motions serve as notices to the Court and Plaintiff does not seek any additional relief in the motions, the motions are denied.

## IV. Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motions (Docs. 3, 5) are **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **February 24, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated January 24, 2025, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**